## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JOHN COLTAN BANKS, | ) | |
| NICKALAS J. BERRY, | ) | |
| JAMES ROBERT VENSON DILLEY, | ) | |
| THOMAS LEE LAYTON OWEN, | ) | **Case No. 20-CV-0311-CVE-JFJ** |
| ROBERT WESLEY SCOTT, | ) | |
| RANDY JACK WIGGINS, and | ) | |
| GARL WILLIAMS, JR., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SHERIFF OF DELAWARE COUNTY,[1] | ) | |
| OKLAHOMA, in his Official Capacity, | ) | |
| CHARLES PHILLIP HAYES, and | ) | |
| SHELLEY LADAWN MAYBERRY, | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>OPINION AND ORDER</u>

Now before the Court are the following motions: The Plaintiffs' Motion in Limine and Brief in Support (Dkt. # 55); Defendant Sheriff of Delaware County's Motion in Limine (Dkt. # 58); Motion in Limine of Defendants Hayes and Mayberry (Dkt. # 59); Motion for Summary Judgment of Defendant Mayberry and Brief in Support (Dkt. # 66); Motion for Summary Judgment of Defendant Hayes and Brief in Support (Dkt. # 69); and Defendant Sheriff's Motion for Summary Judgment and Brief in Support (Dkt. # 70). Plaintiffs filed this case alleging that a detention officer

---

[1]     Harlan Moore, the former Sheriff of Delaware County, was originally named as a defendant in his official capacity, but the parties agreed that the Sheriff of Delaware County in his official capacity could be substituted as the named defendant pursuant to Fed. R. Civ. P. 17(d).  Dkt. # 36.

at the Delaware County Jail (the Jail), Charles Hayes, used an electronic control device (ECD)[2] on

inmates for his own personal enjoyment, rather than for a legitimate penological interest, and they

allege that this behavior was part of a historical pattern or practice of mistreating inmates at the Jail.

Dkt. # 2.  Plaintiffs also allege that Hayes was aided and abetted by another detention officer, Shelly

Ladawn Mayberry, and that the Sheriff of Delaware County (the Sheriff) established a custom or

policy permitting the inappropriate use of force against inmates.  Each defendant has filed a motion

for summary judgment as to some or all of plaintiffs' claims against them, and each party has also

filed a motion in limine seeking to exclude evidence at trial.

## I.

Each of the named plaintiffs in this case, except for John Coltan Banks and Thomas Lee

Layton Owen, was a pretrial detainee at the Jail who was being held in pretrial detention.[3]   Hayes

was hired as a detention officer in August 2019, and Mayberry was hired to work as a detention

officer in September 2019.  Dkt. # 70-18, at 2; Dkt. # 70-20, at 2.  Hayes and Mayberry received a

copy of the Jail's policies and procedures, although it is unclear from Hayes' deposition testimony

if he actually read the policies and procedures.  Dkt. # 70-18, at 6; Dkt. # 82-7, at 3-4.

---

[2]     These devices are often referred to as tasers, because TASER International, Inc. (TASER) is the leading manufacturer of ECDs.  However, the devices manufactured by TASER are more broadly classified as ECDs, and the Court will refer to the devices used on inmates as ECDs.  The parties frequently refer to the use of an ECD as "tasing," and the Court will use this terminology.

[3]     Banks was in custody for bail jumping and violation of conditions imposed by the state drug court.  Dkt. # 70-1; Dkt. # 70-2, at 2-4.  Owen pled guilty to first degree burglary and had been released with a suspended sentence, but he was taken into custody following a domestic assault and battery incident.  Dkt. # 70-7; Dkt. # 70-8, at 4-5.

The Delaware County Sheriff's Office (Sheriff's Office) has guidelines concerning the use of force against inmates at the Jail, and the guidelines permit the use of force "when an inmate exhibits resistance, attempts an escape, is non-compliant to lawful instructions, or threatens or uses force." Dkt. # 73-1, at 6.  The guidelines specifically address the use of an ECD, and a detention officer considering using an ECD should consider:

> [the] [n]ature of the inmate's actions or refusal to comply & other precipitating events;
>
> To what degree the inmate presents a threat to the safety of staff, other inmates, including himself; &
>
> To what degree the inmate is disruptive to the safe and orderly operation of detention operations.

Dkt. # 73-1, at 22.  ECDs may be used only by officers who have successfully completed the requisite training, and the guidelines state that ECDs' should not be used:

> Punitively;
> As a prod or escort device;
> To awaken or motivate unconscious, impaired, or intoxicated individuals;
> For horseplay, or for unauthorized demonstration or experimental exposures;
> On a handcuffed or restrained individual that is under control; or
> For any illegal purpose, such as coercion.

Id. at 23.  Any use of an ECD must be documented in a use of force report and medical responders are to be contacted after the use of an ECD on an inmate.  Id. at 13, 24.

Hayes and Mayberry were assigned to work the night shift at the Jail.  Dkt. # 70-18, at 3.  Hayes and Mayberry typically worked with Cody Hansen or Billie Sparks, but they were sometimes assigned to work with a sergeant if the Jail was short-staffed.  Id. at 5.  In December 2019, employees of the Jail received training in the proper use of an ECD from David Sargent, a member of the Eastern Shawnee Tribal Police.  Dkt. # 70-16, at 9-10.  Hayes and Mayberry attended and

3

completed the ECD training, and Sargent specifically explained that using an ECD without cause was never appropriate.  Id. at 12; Dkt. # 70-22.  Hayes did not receive a training manual or any other written materials about the use of an ECD, and he testified in his deposition that he was not aware that an ECD could cause serious injury.  Dkt. # 82-7, at 3-4.  Hayes witnessed other Jail employees tasing one another in a "playful" manner, and he witnessed sergeants and other detention officers routinely use ECDs on one another.  Id. at 4.  Hayes agreed that detention officers did not regularly use an ECD on inmates as horseplay, although this happened on one or two occasions, and he claims that he subjectively believed that it would increase his "rapport" with inmates if he used an ECD on inmates in a playful manner. Dkt. # 69-3, at 13-14.

Garl Williams, Jr., claims that he was tased by Hayes on December 13, 2019, and Mayberry was not present when this occurred.  Dkt. # 66-1, at 4-5.  Williams claims that Hayes tased Williams' hand and Williams' hand  hurt for about three days after the incident.  Id. at 8.  Williams described Mayberry as "mean," but she never physically harmed Williams.  Id. at 5-6.  On December 19, 2019, James Robert Benson Dilley, Robert Wesley Scott, and Randy Jack Wiggins were playing cards in their cell when Hayes entered the cell to pass out e-cigarettes.  Dkt. # 66-3, at 1.  Hayes tased each of the inmates before he left the cell, and Mayberry was not physically present or on the intercom when the inmates were tased.  Dkt. # 66-5, at 8-9; Dkt. # 66-6, at 2-3; Dkt. # 66-7, at 2-3.  Also on December 19, 2019, Hayes asked inmates Banks and Owen to step into a blind spot from surveillance cameras, and he requested consent to tase them.  Dkt. # 66-8, at 4;  Dkt. # 66-9, at 7.  Layton refused to consent to being tased and, using the intercom system, Mayberry said "don't be a pussy, don't be a bitch" to Layton.  Dkt. # 66-9, at 8; Dkt. # 66-10, at 1.  Hayes tased both Banks and Owen before leaving their cell, and he told them "that wasn't so bad."  Dkt. # 66-9, at 8.  Neither

Owens or Layton immediately reported the incident to prison officials, and Banks believed that the inmates would lose their status as trustees or would be treated differently if they reported Hayes' conduct.  Dkt. # 66-10, at 1.  Later on December 19, 2019, Hayes entered Cell 8 to pass out e-cigarettes and Hayes told the inmates to "line up to get tased" before he would pass out the e-cigarettes.  Dkt. # 66-14, at 4.  Hayes tased Nicholas Berry on the wrist or arm, but Hayes decided "that wasn't good enough" and he tased Berry on the thigh as well.  Id. at 4-5.  Berry recalls hearing Mayberry's voice over the intercom, and she asked Hayes to move the inmates closer to the cell door so she could watch the inmates being tased.  Id. at 7-9.  However, Berry thinks that Hayes would still have tased him even if Mayberry had not been on the intercom.  Id. at 9.

On December 23, 2019, Scott informed a detention officer, Kyle Helmecy, that Hayes had used an ECD in drive-stun mode on Scott and his cellmate without cause.  Dkt. # 70-23, at 2. Another detention officer, Jonathan Jenks, received a similar report from inmates in Cell 6 that Hayes was tasing inmates in Cells 1 and 8, and Jenks contacted Sergeant Levi Johnson to inform him of the inmates' allegations.  Dkt. # 70-25, at 1.  The lieutenant jail administrator, Murray Gross, opened an investigation into the matter and he viewed video footage of the alleged incidents.  Dkt. # 70-16, at 14.  Gross also downloaded data from the ECD used by Hayes.  Dkt. # 70-23, at 2.  The video evidence corroborated the inmates' complaints about Hayes' improper use of an ECD, and the data from the ECD showed that the device had been used at the same dates and times shown in the video footage.  Id.  Gross immediately suspended Hayes pending further investigation.  Id.  Gross also told Johnson and Helmecy to interview relevant witnesses, and the witnesses implicated Mayberry as a participant in Hayes' mistreatment of inmates.  Id.  Gross immediately placed Mayberry on suspension.  Id.  Captain M.G. Wells of the Sheriff's Office interviewed Hayes and

5

Mayberry after giving them a Miranda[4] warning, and Hayes denied improperly using an ECD directly on an inmate. Dkt. # 70-23, at 4. Hayes did admit to make an ECD spark and making threats against an inmate. Id. Mayberry denied any knowledge that Hayes improperly used an ECD, and she also denied making comments encouraging Hayes to use an ECD on inmates. Id. Following completion of the investigation, Hayes' and Mayberry's employments were terminated and they subsequently pled guilty to felony charges of assault and battery arising out of their conduct at the Jail. Dkt. ## 29, 30, 33, 34.

The Jail maintains a grievance procedure for inmates to report civil rights violations, criminal acts, or prohibited acts by staff. Dkt. # 68-1. Inmates may file an informal grievance by speaking to Jail staff, and the grievance policy encourages staff to resolve issues within their authority as quickly as possible. Dkt. # 68-2. Formal grievances may be presented to the jail administrator or undersheriff if an issue cannot be resolved through an informal grievance. Id. A formal grievance must be made in writing within 7 days of the event or action giving rise to the grievance. Id. The jail administrator must respond to the grievance within 15 days, and an inmate may appeal the jail administrator's ruling to the undersheriff. Id. The undersheriff shall resolve the appeal within 15 days and undersheriff's ruling is final. Id. Wiggins and Scott submitted grievances in December 2019 asserting that Hayes tased them without cause or justification, and the jail administrator, Gross, did not respond to the grievances. Dkt. # 70-35, at 3. Gross states that he chose not to respond to the grievances, because an investigation was already underway and the grievances did not request any specific relief. Id. Neither Wiggins nor Scott took any further action to compel a ruling on their grievances or to seek relief from the Jail for Hayes' conduct.

---

[4]     Miranda v. Arizona, 384 U.S. 436 (1966).

On June 30, 2020, plaintiffs filed this case alleging claims under 42 U.S.C. § 1983 against Hayes, Mayberry, and the Sheriff (first and second claims for relief) and state law claims of battery against Hayes and Mayberry (third claims for relief).  Plaintiffs seek compensatory and punitive damages in an amount in excess of $75,000.  When the case was filed, plaintiffs Banks, Scott, and Williams were "prisoners" as that term is defined in the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e (PLRA).  Banks was in the custody of the Oklahoma Department of Corrections (DOC) until he was released on April 2, 2021, and Scott remained in custody at the Jail until July 2020. Dkt. # 69-2; Dkt. # 69-4, at 2.  Scott was transferred to the Mayes County Jail and it appears that he is still in custody, but Banks has been released and he was not in custody when the parties' briefing was filed.  Dkt. # 69-4, at 2.  Williams remained at the Jail until July 29, 2020, and he is currently in the custody of the DOC.  Dkt. # 69-5, at 2-3.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317.  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

**III.**

The Sheriff argues that there is no evidence that any violation of plaintiffs' constitutional rights was caused by an official policy or custom or that an official with final policy-making authority actually participated in the constitutional violation.  Dkt. # 70.  Mayberry claims that she is entitled to qualified immunity from plaintiffs' § 1983 claims, because plaintiffs have not established that their constitutional rights were violated by her conduct or that the law giving rise to the alleged constitutional violation was clearly established when the conduct occurred.  Dkt. # 66, at 20-27.  Hayes argues that he was acting within the scope of his employment when the acts giving rise to plaintiffs' battery claim occurred, and plaintiffs are prohibited from bringing tort claims against him under the Oklahoma Governmental Tort Claims Act, Okla. Stat. tit. 51, § 152.1 et seq. (GTCA).  Mayberry argues that she did not engage in conduct that would qualify as battery under

8

Oklahoma law, and she also seeks summary judgment on plaintiffs' battery claim. Defendants also assert that plaintiffs Banks, Scott, and Williams failed to exhaust their administrative remedies before filing suit, and their federal law claims are barred by the PLRA.[5] Dkt. # 69, at 15-19.

## A.

Defendants argue that plaintiffs Banks, Scott, and Williams were prisoners when the case was filed and they failed to exhaust their administrative remedies before filing suit. Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The term "prisoner" is defined as "any person incarcerated or detained in any facility who is accused of, convicted or, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The Supreme Court has made clear that exhaustion under the PLRA is mandatory, and lower federal courts lack the discretion to waive this requirement. Woodford v. Ngo, 548 U.S. 81 (2006). The exhaustion requirement applies to all claims about "prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The Supreme Court has rejected any judicially-created exceptions to the mandatory exhaustion provision of the PLRA, and any exceptions to this requirement must be enacted by Congress. Ross v. Blake, 578 U.S. 632, 639-40 (2016). The only possible "exception" to the mandatory exhaustion requirement derives from the language of the statute, which is that the

---

[5]     Each defendant raises this argument in their motions for summary judgment, but the issue is primarily briefed in Hayes' motion for summary judgment. Dkt. # 69, at 16-19.

administrative remedies must be "available." Little v. Jones, 607 F.3d 1245, 1250 (10th Cir. 2010). A remedy is "available" for the purpose of the PLRA if there is a grievance procedure that is "capable of use" to obtain "some relief for the action complained of" and the grievance process itself is accessible to the prisoner. Ross, 578 U.S. at 642.

Plaintiffs argue that exhaustion is an affirmative defense and Hayes and Mayberry failed to raise this affirmative defense in their answers. Dkt. # 83, at 14; Dkt. # 84, at 20. The general rule is that an affirmative defense is waived if the defendant fails to plead it. Burke v. Regalado, 935 F.3d 960, 1040 (10th Cir. 2019). However, the Tenth Circuit has permitted a defendant to raise an affirmative defense in a motion for summary judgment as long as the issue is raised well in advance of trial and the plaintiff will not be prejudiced by assertion of the defense. New Mexico v. Dep't of Interior, 854 F.3d 1207, 1232 (10th Cir. 2017); Ahmad v. Furlong, 435 F.3d 1196, 1202 (10th Cir. 2006). In this case, defendants have raised the issue of exhaustion of administrative remedies in a timely motion for summary judgment, and plaintiffs have made no attempt to show that they will be prejudiced if the Court considers this affirmative defense. The Sheriff did raise the affirmative defense of exhaustion of administrative remedies in his answer, and plaintiffs were on notice of this issue from the outset of the litigation. Even though each defendant did not raise this issue in his or her answer, plaintiffs had ample opportunity to conduct discovery on this issue and possibly remedy this issue before it was raised in a motion for summary judgment. The Court rejects plaintiffs' argument that the issue of exhaustion of administrative remedies has been waived.

Four of the plaintiffs were not in custody when the case was filed, but plaintiffs Banks, Scott and Williams were incarcerated when the complaint was filed on June 30, 2020. The exhaustion requirement of the PLRA does not apply to persons who were formerly incarcerated but were not in

custody when the complaint was filed, even if the person's claim arose while he was in custody. May v. Segovia, 929 F.3d 1223, 1232 (10th Cir. 2019).  Plaintiffs Banks, Scott, and Williams make no attempt to show that they exhausted their administrative remedies before filing suit, and the undisputed facts establish that these plaintiffs were in custody when the complaint was filed.  Dkt. # 69, at 9-11; Dkt. # 83, at 6.  Instead, these plaintiffs argue that they are excused from exhausting their administrative remedies, because they feared that they would lose their status as trustees if the came forward with allegations of abuse by Hayes and Mayberry.  Dkt. # 83, at 14.  Plaintiffs also argue that it is unreasonable to expect them to make complaints against their "tormentors," because they feared that they would be subjected to additional abuse if they reported Hayes' and Mayberry's conduct.  Id.  Administrative remedies are considered "unavailable" if "prison administrators thwart inmates of taking advantage of a grievance process through machination, misrepresentation, or intimidation."  Ross, 578 U.S. at 644.  The evidence produced by the parties shows that Hayes improperly used an ECD on inmates and that Mayberry encouraged Hayes to engage in this conduct, but there is no evidence that plaintiffs were being mistreated by any other detention officers at the Jail.  Hayes and Mayberry were fired shortly after plaintiffs' allegations of misconduct were reported to prison officials, and plaintiffs have not made any credible allegations that any person at the Jail other than Hayes or Mayberry posed a threat to their safety.  Plaintiffs Banks, Scott, and Williams could have exhausted administrative remedies without fear of reprisal after Hayes and Mayberry were fired, and plaintiff's vague allegations do not create a genuine dispute of material fact that prison officials thwarted their efforts to exhaust their administrative remedies.  Banks, Scott, and Williams have not made any other arguments suggesting that administrative remedies were unavailable, and their federal claims are subject to the PLRA's exhaustion requirement.  The

11

undisputed evidence establishes that Banks, Scott, and Williams were prisoners when the case was filed and they had not fully exhausted their administrative remedies.  Defendants are entitled to summary judgment as to the § 1983 claims of Banks, Scott, and Williams.[6]

## B.

Mayberry argues that there is no evidence that she actually participated in the use of an ECD against any inmate, and merely taunting inmates or encouraging Hayes in the use of an ECD does not constitute a constitutional violation.  Plaintiffs respond that Mayberry can be held liable under § 1983 under theories that she aided or abetted Hayes in his use of excessive force or that she failed to take any action to prevent Hayes from improperly using an ECD on inmates.

Section 1983 provides a cause of action against any "person who, under color of statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States  . . . thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and law" of the United States.  "The purpose of § 1983 is to deter state actors from using the badge of authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  Wyatt v. Cole, 504 U.S. 158, 161 (1992).   The Supreme Court has held that "government officials performing discretionary functions generally

---

[6]     Even though the Court has found that the PLRA is applicable to Banks, Scott, and Williams, the claims of these plaintiffs are essentially indistinguishable from the claims of plaintiffs Berry, Dilley, Owen, and Wiggins.  The Court will still reference Banks, Scott, and Williams to the extent they are relevant to Court's analysis of the remaining plaintiffs' claims or other plaintiffs have raised similar issues that are also applicable to Banks, Scott, and Williams. Banks also suggests that the Court could simply dismiss his claims and allow him to refile his claims now that he is no longer a "prisoner" under the PLRA.  Dkt. # 83, at 16.  Banks has had a substantial amount of time to file a motion for voluntary dismissal of his claims and he has failed to do so, and the Court declines to permit him to voluntarily dismiss his claims at this time.

are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity shields public officials from facing the burdens of litigation and is an immunity from suit, not simply a defense to a plaintiff's claims.  Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1150 (10th Cir. 2006).  The Tenth Circuit applies a two-step analysis to determine if a defendant is entitled to qualified immunity.  A plaintiff must prove that the defendant's actions violated a specific constitutional right and, if the plaintiff has shown that a constitutional violation occurred, the plaintiff must show that the constitutional right was clearly established when the conduct occurred.  Toevs. v. Reid, 685 F.3d 903, 909 (10th Cir. 2012).  A court has the discretion to consider the steps in whatever order is appropriate under the circumstances.  Id. at 910 (citing Pearson v. Callahan, 555 U.S. 223 (2009)).  The plaintiffs bears the burden to prove that his constitutional rights were violated and that the law giving rise to his claim was clearly established at the time the acts occurred.  Cox v. Glanz, 800 F.3d 1231, 1246 (10th Cir. 2015); Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).

Plaintiffs have alleged a constitutional violation based on the use of excessive force by Hayes, and they also argue that Mayberry is liable under § 1983 due to her active participation in Hayes' conduct.  Under the Eighth Amendment, a person in custody who alleges that a detention officer used excessive force must establish two elements: "(1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind."  Redmond v. Crowther, 882 F.3d 927, 936 (10th Cir. 2018) (quoting Giron v. Corr. Corp. of America, 191 F.3d 1281, 1289 (10th Cir. 1999)).  An official acts with a

sufficiently culpable state of mind if he uses force "'maliciously and sadistically for the very purpose of causing harm,' rather than 'in a good faith effort to maintain or restore discipline.'" Id. at 937 (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)).  Excessive force claims brought by pretrial detainees who have not been convicted of a crime are governed by the Fourteenth Amendment, and the Supreme Court has clarified that such claims do not have a subjective component.  Kingsley v. Hendrickson, 576 U.S. 389, 396-97 (2015); Rowell v. Bd. of County Comm'rs of Muskogee County, Oklahoma, 978 F.3d 1165, 1171 (10th Cir. 2020).  Instead, courts focus solely on whether the use of force and the amount of force used were objectively reasonable under the circumstances, and courts "make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight."  Rowell, 978 F.3d at 1171 (quoting Kingsley, 576 U.S. at 397).

The Court notes that there are seven plaintiff and the evidence shows that Mayberry was not involved in the tasing incidents for each of the plaintiffs, and the Court must initially determine which plaintiffs could be attempting to assert § 1983 claims against Mayberry.  On December 19, 2019, Hayes used an ECD on plaintiffs Banks and Owen, and both of these plaintiffs testified in their deposition that they could hear Mayberry on the intercom when Hayes entered their cell.  Dkt. # 66-8, at 12; Dkt. #66-9, at 7.  Mayberry allegedly told Owen not to "be a bitch" and allow Hayes to tase him.  Dkt. # 66-9, at 7.  On the same day, Berry testified that Hayes used an ECD on him, and Berry heard Mayberry over the intercom asking Hayes to move Berry to a place where she could see them.  Dkt. # 66-14, at 7-9.  Plaintiffs Wiggins, Dilley, Scott, and Williams admit that they are not asserting claims against Mayberry arising out of Hayes' inappropriate use of an ECD.  Dkt. # 66, at 12; Dkt.

14

# 84, at 6.  Therefore, the relevant "plaintiffs" asserting § 1983 claims against Mayberry are Banks, Owen, and Berry only.

Mayberry raises three arguments in opposition to plaintiffs' § 1983 claim against her based on her alleged role in Hayes' use of excessive force.  First, Mayberry argues she did not personally use excessive force, or any force at all, against any of the plaintiffs, and her conduct did not cause a violation of plaintiffs' constitutional rights.  Dkt. # 66, at 21-23.  Second, Mayberry asserts that verbal harassment or taunting is not sufficient, by itself, to qualify as the deprivation of a constitutional right for the purpose of a § 1983 claim.  Id. at 24-25.  Finally, Mayberry argues that the law giving rise to plaintiffs' § 1983 claim against her was not clearly established when the conduct occurred.  Id. at 26.

Plaintiffs have alleged a constitutional violation against Mayberry based on her participation in Hayes' improper use of an ECD.  To establish causation for a § 1983 claim, a plaintiff must "establish the 'requisite causal connection' by showing 'the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights."  Schneider v. City of Grand Junction Police Dept., 717 F.3d 760 (10th Cir. 2013) (quoting Poolaw v. Marcantel, 565 F.3d 721, 732-33 (10th Cir. 2009)).  Stated another way, the defendant's conduct must be the proximate cause of the plaintiff's injury.  Martinez v. Carson, 697 F.3d 1252, 1255 (10th Cir. 2012).  This analysis encompasses traditional principles of causation applicable to tort claims, and a person's act cannot qualify as the proximate cause of an injury if "another act intervened and superseded the officer's liability for subsequent events."  Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006).

Viewing the evidence in a light most favorable to plaintiffs, the Court finds that they have not shown that any act by Mayberry caused their injury. Mayberry's conduct in relation to plaintiffs Banks, Owen, and Berry was offensive, but there is no evidence suggesting that her statements over the intercom caused Hayes to use an ECD without a legitimate purpose. Berry testified in his deposition that Hayes would have tased him even if Mayberry had not been on the intercom. Dkt. # 66-14, at 9. Banks and Owen claim that Mayberry was on the intercom when Hayes entered their cell, and she encouraged the inmates to allow Hayes to use his ECD on them. Dkt. # 66-8, at 9; Dkt. # 66-9, at 8. Owen testified that nothing Mayberry said over the intercom made him feel that he had to consent to Hayes' request to use an ECD for his own enjoyment and he was not particularly offended by Mayberry's language. Dkt. # 66-8, at 12-14. Banks claims that Hayes and Mayberry were "feeding off each other's energy" and it wasn't a "one-man game," but he admits that Mayberry did not specifically direct Hayes to use an ECD on any inmate. Dkt. # 66-9, at 14. Plaintiffs argue that Mayberry "actively participated in the unconstitutional infliction of pain upon inmates Banks, Owen and Berry by encouraging, aiding and abetting [Hayes]" in the improper use of an ECD, but they cite no evidence suggesting that Mayberry's conduct actually caused Hayes to engage in this conduct. Plaintiffs' argument that Mayberry "participated" in the use of excessive force by Hayes is not the same as making a showing that Mayberry's conduct actually caused plaintiffs' injuries. Plaintiffs Banks, Owen and Berry have failed to establish that Mayberry's conduct was the proximate cause of their injuries, and they cannot establish the essential elements of a § 1983 claim against Mayberry.

Mayberry also argues that she would be entitled to qualified immunity, even if plaintiffs could come forward evidence giving rise to a genuine dispute of material fact as to each element of

a § 1983 claim.  Mayberry is entitled to qualified immunity as to plaintiffs' § 1983 claim against her

unless plaintiffs show that Mayberry's conduct violated a specific constitutional right and that the

constitutional right was clearly established when the conduct occurred.  Toevs, 685 F.3d at 909.  The

Court has the discretion to proceed directly to the clearly established law prong, and the Court finds

that this would be an appropriate case to do so.  The Tenth Circuit has explained that law is clearly

established if the contours of a constitutional right are "sufficiently clear that a reasonable official

would understand that what he is doing violates that right."  Perry v. Durborow, 892 F.3d 1116, 1123

(10th Cir. 2018).  The contours of a right are generally "sufficiently clear" only if the plaintiff

"identif[ies] an on-point Supreme Court or published Tenth Circuit decision" or "shows 'the clearly

established weight of authority from other courts [has] found the law to be as plaintiff maintains .

. . .'"  Id.  District courts have been cautioned not to define a constitutional right "at a high level of

generality" but, instead, "the clearly established law must be 'particularized' to the facts of the case."

Id.  To find that the law is clearly established, the district court must "identify a case where an

offic[ial] acting under similar circumstances as [defendant]" was held to have violated the

constitutional right at issue.  Id. at 1124.

Plaintiffs have made little or no effort to show that clearly established law would have put

Mayberry on notice that her conduct violated plaintiffs' constitutional rights.  Plaintiff's entire

argument on the issue of clearly established law is the following:

> The law is clearly established that using a taser without cause or justification
> constitutes excessive force, is cruel and unusual punishment.  *Casey v. City of*
> *Federal Heights*, 509 F.3d 1278 (10th Cir. 2007).  In the case of *Williams v. Miller*,
> No. 15-0028-JED-FHM, 2016 WL 4537750, the Court analyzed the use of a taser on
> an inmate without justification and concluded that a Defendant is not entitled to
> qualified immunity for the use of a taser without cause or justification because it
> constitutes an excessive use of force under clearly established law.  An officer is

> legally responsible for the excessive force of another officer when they actively participate in the excessive force or fail to intervene to prevent another law enforcement officer from using excessive force. *Booker v. Gomez*, 745 F.3d 406 (10th Cir. 2014) and *Mick v. Brewer*, 76 F.3d 1127 (10th Cir. 1996). In *Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008) . . . .[7]

Dkt. # 84, at 15-16. The Court initially notes that the <u>Williams</u> decision cited by plaintiffs is a district court ruling, and the Court cannot consider district court decisions to determine whether the law is clearly established. <u>Ullery v. Bradley</u>, 949 F.3d 1282, 1291 (10th Cir. 2020) (cases relevant to the clearly established law analysis must be from the Supreme Court, Tenth Circuit, or a "consensus of cases of persuasive authority" from other circuit courts). The case of <u>Estate of Booker v. Gomez</u>, 745 F.3d 405 (10th Cir. 2014), concerned the death of an inmate caused by the use of excessive force, including the undisputed excessive use of an ECD, by multiple law enforcement officers in a prison setting, and the Tenth Circuit found that officers who were present and in a position to intervene to protect the victim from the use of excessive force could be held liable under a failure to intervene theory. <u>Booker</u>, 745 F.3d at 422-23. Plaintiffs' citation to <u>Mick</u> and <u>Fogarty</u> do not appear to have any specific application to this case, because <u>Mick</u> and <u>Fogarty</u> simply involve the alleged use of excessive force by a police officer and no ECD was used during the encounters in either case. <u>Fogarty</u>; 523 F.3d at 1150-52; <u>Mick</u>, 76 F.3d at 1130-31. Mayberry was not physically present when Hayes improperly used an ECD on inmates, and plaintiffs have not offered any evidence concerning actions that Mayberry could have taken to prevent Hayes from harming them. The Court would find that the improper use of an ECD by a detention officer, whether in an excessive manner or for an improper purpose, would constitute a clearly established violation of

---

[7]    This sentence is unfinished in plaintiff's response (Dkt. # 84), but the Court will examine the case cited by plaintiffs to determine if the case tends to show that the law giving rise to plaintiffs' § 1983 claim against Mayberry was clearly established.

constitutional law, but that applies to Hayes only and he has not requested qualified immunity on plaintiffs' § 1983 claim.  Plaintiffs have not identified any prior decisions by the Supreme Court or the Tenth Circuit that are sufficiently particularized to the facts of this case that would suggest that a reasonable law enforcement official who encouraged another in the improper use of an ECD would have known that he or she was committing a constitutional violation, and Mayberry has qualified immunity from plaintiffs' § 1983 claim.  Mayberry would have qualified immunity from plaintiffs' § 1983 claim, even if plaintiffs had come forward with sufficient evidence to establish each element of a § 1983 claim.

## C.

The Sheriff does not contest that Hayes' use of an ECD on inmates was improper and potentially a violation of the inmates' constitutional rights, but the Sheriff argues that Hayes' and Mayberry's conduct was contrary to the official policies and training provided by the Jail.  Dkt. # 70, at 7.  Hayes and Mayberry were immediately suspended after the Sheriff learned of the inmates' allegations of improper use of an ECD, and Hayes and Mayberry were fired and referred for criminal prosecution.  The Sheriff argues that any violation of plaintiffs' constitutional rights was not caused by an official policy or custom, and plaintiffs cannot prevail on a § 1983 claim against the Sheriff.  Plaintiffs cite a history of incidents in which inmates of the Jail were mistreated by detention officers in various ways, and plaintiffs claim that policies intended to protect inmates from abuse by detention officers are not regularly enforced.  Dtk. # 82, at 15-23.  Plaintiffs claim that the long-standing practice of providing inadequate training to detention officers, combined with unenforced inmate safety policies, qualifies as a custom or policy that supports a § 1983 claim against the Sheriff in his official capacity.

Under § 1983, a local government or municipality may be held liable for adopting an official policy or custom causing a violation of constitutional rights, but local governments can not be sued under a <u>respondeat</u> <u>superior</u> theory of liability.  <u>Monell</u>, 436 U.S. at 691.  "To establish a claim for damages under § 1983 against municipal entities or local government bodies, the plaintiff must prove (1) the entity executed a policy or custom (2) that caused the plaintiff to suffer deprivation of constitutional or other federal rights."  <u>Moss v. Kopp</u>, 559 F.3d 1155, 1168 (10th Cir. 2009).   It is not enough for a plaintiff to allege that the actions of a governmental employee injured him.  <u>Olsen v. Layton Hills Mall</u>, 312 F.3d 1304, 1318 (10th Cir. 2002).  "Instead, it must be shown that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action."  <u>Seamons v. Snow</u>, 206 F.2d 1021, 1029 (10th Cir. 2000).  One way for a plaintiff to prove a claim of municipal liability is to show that an express policy deprived the plaintiff of a constitutional right.  <u>Christensen v. Park City Mun. Corp.</u>, 554 F.3d 1271, 1279 (10th Cir. 2009).  Another way to establish municipal liability is to show that an action taken by a final policymaker for the governmental entity violated or caused a violation of the plaintiff's constitutional rights.  <u>Simmons v. Uintah Health Care Special Dist.</u>, 506 F.3d 1281, 1285 (10th Cir. 2007).

Plaintiffs could be arguing that the Sheriff is liable for maintaining an informal policy of permitting detention officers to use ECDs on inmates, for failing to train detention officers about the policies and procedures concerning the use of ECDs, and for failing to properly supervise detention officers.  Dkt. # 82, at 23-28.  The Court will initially consider plaintiff's argument that incidents of inmate abuse were so pervasive that the Sheriff maintained an informal custom or policy

permitting the use of ECDs without cause.  Plaintiffs argue that the Jail maintained formal policies prohibiting the abuse of inmates but, in practice, the Sheriff permitted detention officers to use ECDs on inmates to the extent that Hayes believed this was a routine and accepted practice at the jail.  Id. at 24.  A municipal policy or custom may take the form of "(1) 'a formal regulation or policy statement'; (2) an informal custom 'amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'; (3) 'the decisions of employees with final policymaking authority'; (4) 'the ratification by such final policymakers of the decisions–and the basis for them–of subordinates to whom authority was delegated subject to these policymakers' review and approval'; or (5) the 'failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused.'"  Bryson v. Oklahoma City, 627 F.3d 784, 788 (10th Cir. 2010) (quoting Brammer-Hoelter v. Twin Peaks Charter Acad., 602 F.3d 1175, 1189-90 (10th Cir. 2010)).

Plaintiffs primarily rely on two categories of evidence related to the misuse of an ECD in an attempt to show that the Sheriff maintained an informal policy supporting a § 1983 claim under a theory of municipal liability.  First, plaintiffs cite to an incident in which an inmate, Randy Wiggins, claimed that he had been tased in exchange for e-cigarettes on one occasion between March and July 2019.  Wiggins testified at his deposition that Jonathan Jenks, a detention officer, tased him in exchange for an e-cigarette, but Wiggins did not report the incident to Jail officials. Dkt. # 82-8, at 2.  Wiggins claims that another detention officer named "JoJo" engaged in similar conduct during the same time period.  Id. at 3.  Wiggins also testified about an incident in which a former Jail administrator, Terry Hibbard, tased a handcuffed and defenseless inmate, Nathan Daniels.  Dkt. #

82-6, at 7.  The incident was reported to Jail officials by detention officers who witnessed the incident, and Hibbard resigned before he could be formally disciplined or fired.  Id. at 7-8.  Wiggins was taken back into custody in October 2019, and Wiggins was tased by Hayes on December 19, 2019 without cause.  Dkt. # 82-8, at 4.  Second, plaintiffs rely on Hayes' conduct underlying their § 1983 claims as evidence that the Sheriff maintained an informal policy of allowing detention officers to abuse inmates by improperly using an ECD.  The Sheriff does not dispute that Hayes' conduct was improper, but he notes that the Jail administrator, Gross, opened an investigation into the allegations of misconduct.  Hayes was immediately suspended by Gross, and Hayes' employment was terminated on December 27, 2019.  Gross also determined that Mayberry encouraged Hayes in the misuse of an ECD and immediately suspended her pending further investigation.  Mayberry's employment was also terminated, and both Hayes and Mayberry were referred for criminal prosecution.

Plaintiffs have not shown that the practice of misusing ECDs was so permanent and well settled that Hayes's and Mayberry's conduct can be treated as part of an informal policy or custom maintained by the Sheriff.  For approximately one week in December 2019, Hayes tased inmates in exchange for providing them e-cigarettes, and Mayberry could be heard on the intercom encouraging the inmates to allow Hayes to tase them.  However, the Jail had an express policy prohibiting this type of conduct, and Jail policies concerning the use of an ECD had been provided to Hayes and Mayberry.  Upon learning of Hayes' and Mayberry's conduct, their employment was immediately suspended and they were fired after an investigation confirmed that Hayes was misusing an ECD for non-penological purposes.  Plaintiffs argue that Hayes' conduct was not an isolated incident, and Wiggins has come forward with allegations that a detention officer improperly tased him and another

inmate who was handcuffed.  Wiggins' claims concerning his treatment prior to December 2019 and his description of the Daniels' incident do not tend to show that the misuse of ECDs by detention officers occurred routinely or that it was tolerated by Jail officials.  Wiggins testified in his deposition that he was tased one time by a detention officer sometime between March and July 2019, but Wiggins failed to report the incident to Jail officials.  This does not tend to show that Jail officials knew about the improper use of an ECD and failed to enforce Jail policies prohibiting such conduct.  Wiggins also testified about an incident in which a handcuffed inmate, Daniels, was tased by a former Jail administrator, Hibbard.  The Sheriff was aware of the incident and Hibbard resigned before he could be fired.  Dkt. # 82-6, at 7-8.  Plaintiffs complain that Hibbard was not formally disciplined or that other detention officers involved in the incident were not disciplined for failing to intervene. Dkt. # 82, at 15.  Nothing about the Daniels' incident suggests that the Sheriff tolerated the inappropriate use of an ECD on a defenseless inmate, and Harlan Moore, the former Sheriff of Delaware County, testified in his deposition that Hibbard would have been fired if he had not preemptively resigned.  Dkt. # 82-6, at 8.  Plaintiffs have not shown that the Sheriff maintained an informal custom or policy permitting detention officers to misuse ECDs.

Plaintiffs also argue that the Sheriff could be held liable for Hayes' and Mayberry's conduct under a theory that the Sheriff failed to train or properly supervise detention officers.  The Supreme Court has found that there are "limited" circumstances under which a municipality can be held liable for a failure to train its employees, and the municipality's actions must rise to the level of deliberate indifference.  City of Canton, Ohio v. Harris, 489 U.S. 378, 386-88 (1989).  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train," and a plaintiff must show that the municipality acted with "deliberate indifference to the rights of

persons with whom the [untrained employees] come into contact." <u>Connick v. Thompson</u>, 563 U.S. 51, 61 (2011).  The deliberate indifference standard is satisfied "when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm to others." <u>Waller v. City and County of Denver</u>, 932 F.3d 1277, 1284 (10th Cir. 2019)(quoting <u>Barney v. Pulsipher</u>, 143 F.3d 1299, 1307 (10th Cir. 1998)).  The plaintiff must also establish that the municipal policy or custom of failing to train or supervise its employees actually caused a violation of the plaintiff's constitutional rights, and the causation requirement is "applied with especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring." <u>Id.</u> at 1284.  For a failure to train or supervise claim under § 1983, the plaintiff must establish as a necessary element of his claim that an individual officer or deputy committed a constitutional violation, or that the combined acts or omissions of several employees acting under a governmental policy violated an individual's constitutional rights. <u>Estate of Burgaz by and through Zommer v. Bd. of Cty. Comm'rs for Jefferson Cty, Colorado</u>, 30 F.4th 1181, 1189 (10th Cir. 2022).

Plaintiffs argue that the Sheriff can be held liable for failing to train or supervise Hayes and Mayberry, because they engaged in the unconstitutional use of force and there is a causal link between the constitutional violation and the inadequate training or supervision provided to Hayes and Mayberry.  Dkt. # 82, at 26-28.  For the purpose of analyzing plaintiffs' failure to train or supervise claims, the Court will assume that Hayes violated plaintiffs' constitutional rights, but plaintiffs must still meet their burden to show that the Sheriff actually failed to provide adequate training or supervision and did so with deliberate indifference to plaintiffs' constitutional rights.

24

Plaintiffs have merely made vague and unsubstantiated allegations concerning an alleged failure to train or supervise Hayes and Mayberry, and they have not produced any evidence tending to show that the Sheriff actually failed to provide necessary training or supervision or that the Sheriff acted with deliberate indifference.   The Jail has an express policy prohibiting the use of ECDs for "horseplay" or "[f]or any illegal purpose," and Hayes and Mayberry received additional training concerning the use of an ECD.  Dkt. # 70-16, at 9-10.; Dkt. # 73-1, at 22.  The evidence shows that the Sheriff enforces these policies when he was notified of a potential violation.   Hayes and Mayberry were immediately suspended when the inmates' allegations concerning the misuse of an ECD came to light.   The evidence does not support plaintiffs' argument that the Sheriff failed to provide sufficient training concerning the proper use of ECDs, or that the Sheriff failed to enforce policies concerning the improper use of ECDs.   Instead, the evidence shows that the Sheriff responded promptly to prevent further abuse of inmates, and the express policies of the Jail to prevent the misuse of ECDs were properly enforced by the Sheriff.   The Court finds no evidence suggesting that the Sheriff failed to train or supervise Hayes or Mayberry, and the Sheriff is entitled to summary judgment on plaintiffs' § 1983 claim.

### D.

Hayes argues that plaintiffs' state law battery claim against him is barred by the Oklahoma Governmental Tort Claims Act, Okla. Stat. tit. 51, § 152.1 et seq. (GTCA), because he was acting within the scope of his employment and he is immune from suit.  Dkt. # 69, at 20-23.  Mayberry argues that she did not actually make physical contact with any of the plaintiffs and she cannot be liable for battery under Oklahoma law.  Dkt. # 66, at 27.  Plaintiffs respond that summary judgment is not appropriate on the issue raised by Hayes, because there is a genuine dispute as to a material

25

fact as to whether Hayes was acting within the scope of his employment when he used an ECD on inmates.  Plaintiffs assert that Mayberry pled guilty to felony assault and battery charges in state court, and Mayberry is prohibited from relitigating facts and legal issues determined by the state court.  Dkt. # 84, at 17.

The state of Oklahoma has adopted the doctrine of sovereign immunity for the "state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions," and the state is liable for torts only to the extent that Oklahoma's sovereign immunity is waived in the GTCA.  Okla. Stat. tit. 51, § 152.1. The state of Oklahoma has agreed to assume liability for "loss resulting from its torts or the torts of its employees acting within the scope of their employment subject to the limitations and exceptions specified in this act and only where the state or political subdivision, if a private person or entity, would be liable for money damages under the laws of this state."  Okla. Stat. tit. 51, § 153(A).  The term "scope of employment" is defined as the "performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority . . . ."  Okla. Stat. tit. 51, § 152(12).  A government employee acting within the scope of his or her employment is relieved from civil liability for tortious conduct, but the political subdivision is not subject to liability when an employee acts outside of the scope of his or her employment.  Pellegrino v. State ex rel. Cameron University ex rel. Bd. of Regents of State, 63 P.3d 535, 537 (Okla. 2003).  The political subdivision is also not liable if the tort claim "necessarily excludes good faith conduct on the part of the employee . . . because the GTCA explicitly excludes bad faith action from its definition of the scope of employment . . . ."  Tuffy's, Inc. v. City of Oklahoma City, 212 P.3d 1158, 1164 (Okla. 2009).

26

Plaintiffs argue that Hayes has been found guilty of seven felony counts of assault and battery in Oklahoma state court, and they argue that this precludes Hayes from relitigating the facts or legal issues determined by his guilty pleas.  Dkt. # 83, at 15-16.  This is a separate issue that has not been raised in Hayes' motion for summary judgment, and the Court will focus on the actual issue raised by Hayes, which is that he is immune from suit under the GTCA.  Hayes acknowledges that intentional torts, such as battery, are generally outside the scope of a person's employment.  Miner v. Mid-America Door Co., 68 P.3d 212, 222 (Okla. Civ. App. 2002) (there is a "general rule that 'it is not within the scope of an employee's employment to commit an assault upon a third person'").  Hayes argues that there is an exception to the general rule when the "act is incidental to and done in furtherance of the business of the employer even though the servant or agent acted in excess of the authority or willfully or maliciously committed the wrongs."  Baker v. Saint Francis Hosp., 126 P3d 602, 605 (Okla. 2005).

Hayes argues that he subjectively believed that using an ECD was merely "horseplay" and he did not intend to harm the inmates, and he claims that he was not aware that using an ECD in drive-stun mode could cause serious injury to another person.  Dkt. # 69-3, at 8-9.  Hayes testified at his deposition that he had seen other employees of the Jail use an ECD on inmates and other detention officers, and he was not aware that the employees were disciplined for this behavior.  Id. at 31-33.  Hayes believed that it was important to establish good relationships with the inmates, and Hayes testified that the use of ECDs "seemed to be normal and nothing outside of normal, common practices."  Id. at 13.  Hayes claims that he was not personally aware that an ECD could put out as much as 50,000 volts of electricity in drive-stun mode, and he never used an ECD on inmate without the inmate's consent.  Id. at 21-22.

27

Viewing the evidence in a light most favorable to plaintiffs, the Court finds that there is a genuine dispute as to a material fact that precludes a pretrial finding that Hayes was acting within the scope of his employment when he improperly used an ECD on inmates.  Hayes' argument that he was acting within the scope of his employment is primarily based on his subjective belief that he was merely engaging in "horseplay" and that he did not act with the intention to harm the inmates. Hayes may argue to the jury that he witnessed other employees of the Jail use an ECD on inmates and that he believed this was a common practice, but the use of an ECD with no legitimate penological purpose was plainly prohibited by Jail policy.  Dkt. # 73-1, at 13.  The Jail's policy for the use of ECDs specifically prohibits the use of ECDs for "horseplay," and Hayes also received training that it was never acceptable to use an ECD on an inmate without a legitimate penological purpose.  Dkt. # 70-16, at 12.  The Court also notes that the Sheriff has vigorously argued that he cannot be held liable for Hayes' and Mayberry's conduct, because their conduct was clearly not permitted by Jail policy and they were acting outside the scope of their employment.  Dkt. # 70, at 22-24. This strongly suggests that the facts underlying this issue are disputed and that a reasonable jury could find in favor of plaintiffs on this issue, and the Court denies Hayes' motion for summary judgment as to plaintiff's state law battery claim.

Mayberry argues that she did not actually commit the tort of battery, because she did not make physical contact with plaintiffs and this is a necessary element for the tort of battery under Oklahoma law.  Dkt. # 66, at 27.  To commit the tort of battery, a defendant must "without the consent of the plaintiff, act[] either with the intent of making a harmful or offensive contact with the plaintiff's person or with the intent of putting the plaintiff in apprehension of such a contact," and the defendant's act must result in a harmful or offensive contact with the plaintiff.  Graham v.

28

Zoellner, 2019 WL 2216487, *4 (N.D. Okla. 2019).  There is no dispute that Mayberry did not directly make contact with any of the plaintiffs, because she was not physically present when Hayes used an ECD on the inmates.  Plaintiffs do not respond to Mayberry's argument that she did not actually commit the tort of battery but, instead, plaintiffs argue that she cannot contest her tort liability after pleading guilty to the crime of assault and battery.  Dkt. # 84, at 17.  Plaintiffs are correct that Mayberry may be precluded from relitigating facts or legal issues that were necessary resolved by the state court as part of her guilty plea.  Martin v. Phillips, 422 P.3d 143 (2018). However, plaintiffs have wholly failed to set forth what facts or issues were actually decided by the state court and if those findings would translate into civil liability for battery.  In her guilty plea, Mayberry admitted that she "was on the intercom system at [the Jail] and "encouraged or participated distantly in the use of a taser by [Hayes]."  Dkt. # 82-4, at 5.  The state court accepted these facts as sufficient for a guilty plea to charges of assault and battery, but it is not clear that the facts to which Mayberry admitted would necessarily give rise to civil liability for battery.  Plaintiffs have also cited no authority suggesting that a person can be held liable for battery based on another person's use of physical force.  It is not the Court's job to construct an argument under which Mayberry can be found liable for the tort of battery.  The Court finds that plaintiffs have not come forward with any evidence or cited any legal authority suggesting that Mayberry can be held liable for civil battery, and Mayberry's motion for summary judgment is granted as to plaintiffs' battery claim.

29

**E.**

Hayes argues that plaintiffs have failed to come forward with evidence that would support an award of punitive damages under § 1983.[8] Dkt. # 69, at 24.  Under § 1983, punitive damages may awarded if "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  Smith v. Wade, 461 U.S. 30, 56 (1983).  Hayes claims that he subjectively believed that he was engaged in "simple horseplay with the inmates" and he had no actual intent to cause harm to anyone.  Dkt. # 69, at 24.  The Court finds that this goes to a matter of witness credibility that must be resolved by the jury, and this issue is not suitable for resolution on a motion for summary judgment.  The Court cannot simply accept Hayes' explanation for his conduct when there is conflicting evidence in the summary judgment record, and a reasonable jury could find that Hayes acted with reckless indifference to the rights of plaintiffs by using an ECD for no penological purpose and merely to inflict pain for his own personal enjoyment.  Hayes' request for summary judgment on the issue of punitive damages is denied.

**F.**

The parties have filed motions in limine to exclude evidence at trial.  Dkt. ## 55, 58, 59.  The Court has reviewed the motions and finds that many of the issues raised in the motions in limine are moot in light of this Opinion and Order.  The Court also notes that local rules require the parties to confer with opposing counsel before filing a motion in limine, and this requirement is also stated in the Court's scheduling order.  Dkt. # 50.  Plaintiffs' motion in limine fails to state whether the parties

---

[8]     Mayberry and the Sheriff raise similar arguments, but the Court has found that plaintiffs cannot maintain a § 1983 claim against these defendants.

conferred before plaintiffs filed their motion in limine, and it appears that many of the issues raised by plaintiffs can be resolved by agreement or stipulation of the parties. The Court finds that the parties' motion in limine (Dkt. ## 55, 58, 59) are moot, but the parties will be permitted to refile motions in limine should any issues remain after this Opinion and Order that cannot be resolved by agreement of the parties.

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment of Defendant Mayberry and Brief in Support (Dkt. # 66) and Defendant Sheriff's Motion for Summary Judgment and Brief in Support (Dkt. # 70) are **granted**. **The Sheriff of Delaware County in his official capacity and Shelley Ladawn Mayberry are hereby terminated as defendants**.

**IT IS FURTHER ORDERED** that Motion for Summary Judgment of Defendant Hayes and Brief in Support (Dkt. # 69) is **granted in part** and **denied in part**: the motion is granted as to failure to exhaust administrative remedies under the PLRA as to the claims of plaintiffs Banks, Scott, and Williams, and the motion is denied as to all other issues.

**IT IS FURTHER ORDERED** that The Plaintiffs' Motion in Limine and Brief in Support (Dkt. # 55), Defendant Sheriff of Delaware County's Motion in Limine (Dkt. # 58), Motion in Limine of Defendants Hayes and Mayberry (Dkt. # 59) are **moot**. Plaintiffs and Hayes may refile one motion in limine each containing all arguments, no later than **October 11, 2022**, if there are evidentiary issues remaining in light of this Opinion and Order.

**IT IS FURTHER ORDERED** that the only remaining claims are plaintiffs Berry, Dilley, Wiggins, and Williams' § 1983 claims against Hayes, and all named plaintiffs' state law battery claims against Hayes.

31

**IT IS FURTHER ORDERED** that an amended scheduling order will be entered forthwith.

**DATED** this 14th day of September, 2022.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE